**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>    Plaintiff,  )<br>  )<br>v.  )<br>  )<br>LATONIA CROOM,  )<br>    Defendant.  ) | No. 1:11-cv-01371-JDB-egb<br>Cr. No. 1:09-cr-10030-JDB-1 |

**ORDER DENYING & DISMISSING MOTION PURSUANT TO 28 U.S.C. § 2255,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH, AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

On December 7, 2011, Defendant, Latonia Croom filed a motion pursuant to 28 U.S.C. § 2255 alleging that trial counsel provided ineffective assistance during her sentencing hearing. (Docket Entry ("D.E.") 1.) On June 27, 2012, the Court directed the United States to respond to the motion to vacate. (D.E. 2.) On November 15, 2012, the United States filed an answer contending that Defendant's motion is without merit. (D.E. 14.)

## I.   PROCEDURAL HISTORY

On March 16, 2009, a federal grand jury returned a seven-count indictment against Latonia Croom and Christopher Ivory. (Indictment, Criminal ("Cr.") D.E. 1.) Croom was charged with conspiracy to possess with intent to distribute and distribution of "Ecstasy", 3, 4-Methylenedioxy Amphetamine, in violation of 21 U.S.C. § 846 (Count One); possession of approximately 200 dosage units of "Ecstasy", 3, 4-Methylenedioxy Amphetamine with intent to distribute and distribution, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Two);

possession of approximately 200 dosage units of "Ecstasy", 3, 4-Methylenedioxy Amphetamine with intent to distribute and distribution, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Three); possession of approximately 300 dosage units of "Ecstasy", 3, 4-Methylenedioxy Amphetamine with intent to distribute and distribution, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Four); possession of approximately 300 dosage units of "Ecstasy", 3, 4-Methylenedioxy Amphetamine with intent to distribute and distribution, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Five); and possession of firearms by a convicted felon (Count Seven). (*Id.* at 1–7.) On July 21, 2009, Croom pled guilty to Counts One and Seven of the indictment, pursuant to a written plea agreement. (Minute ("Min.") Entry, Cr. D.E. 37.) The plea agreement provided as follows:

> Come now the parties herein, the defendant, LATONIA CROOM, being represented by counsel, M. DIANNE SMOTHERS, and the United States being represented by JERRY R. KITCHEN, Assistant United States Attorney for the Western District of Tennessee and hereby agree as follows.
>
> 1. The following plea agreement constitutes the entire agreement between the parties and the parties agree that any issues not specifically addressed by this plea agreement shall be resolved by the Court in accordance with the applicable statutes, guidelines, rules and case law.
>
> 2. The defendant agrees to plead guilty to Count's [sic] 1 and 7 of the Indictment in the above-styled cause. The defendant will pay the $200.00 special assessment prior to sentencing.
>
> 3. There is no agreement as to the appropriate criminal history of the defendant.
>
> 4. Should it be judged by the Government that the defendant has committed or attempted to commit any additional crimes or has engaged in any conduct constituting, obstructing or impeding justice within the meaning of United States Sentencing Guidelines Section 3C1.1 or has failed to make any court appearances in this case, from the date of the defendant's signing of this plea agreement to the date of the defendant's sentencing, or if the defendant attempts to withdraw his/her plea, the Government will be released from its obligations and would

become free to argue for any sentence within statutory limits. Such a breach by the defendant would not release the defendant from this plea of guilty.

5. Based on the Defendant's anticipated future assistance to the Government, it is contemplated that the Government may recommend to the Court a departure in the Defendant's sentence pursuant to U.S. Sentencing Guidelines § 5K1.1 and 18 U.S.C. § 3553(e). This would be solely within the discretion of the Government and is not part of the plea agreement. Substantial assistance is understood by both parties to require good faith during all phases of the cooperation period, including the Defendant's provision of complete and truthful information which assists in the investigation or prosecution of other individuals and complete and truthful testimony at subsequent proceedings when needed. The Defendant acknowledges that the Government's determination of whether the Defendant has cooperated fully and provided substantial assistance, and the Government's assessment of the value, truthfulness and completeness of the Defendant's assistance, is solely within the judgment and discretion of the Government and shall be binding upon the Defendant.

6. The parties agree that the Government will recommend the following: (1) that the Defendant receive a three-level reduction for acceptance of responsibility under U.S. Sentencing Guidelines § 3E1.1; and (2) that the Defendant be sentenced at the lowest end of the applicable guideline range.

7. The Defendant is aware that Title 18 United States Code, section 3742 affords him/her the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that he/she has discussed the appeal waiver set forth in this agreement with his/her attorney. The defendant further agrees, together with the United States, to request that the district court enter a specific finding that the defendant's waiver of his/her right to appeal the sentence to be imposed in this case was knowing and voluntary.

8. The defendant understands and agrees that the Court will make the final determination of facts as to any sentence and as to any mitigating or aggravating factors concerning the sentence to be imposed. Adverse rulings by the Court shall

not be grounds for the withdrawal of the Defendant's guilty plea or to appeal any sentence imposed. The Court is not limited to consideration of the facts and events provided by the Government.

9. There are no other agreements between and among the parties to this agreement. The defendant enters this agreement freely, knowingly, and voluntarily, and upon the advice of counsel.

(Plea Agreement, Cr. D.E. 38 at 1–4.)

On April 11, 2011, the Court sentenced Defendant to thirty-six months of imprisonment, to be followed by a three-year term of supervised release. (Min. Entry, Cr. D.E. 101.) The Court's judgment was entered on April 12, 2011. (Judgment ("J."), Cr. D.E. 102.) Croom did not appeal.

On December 7, 2011, Defendant filed this motion to vacate alleging that her attorney, Smothers, provided ineffective assistance by failing to investigate and challenge the two-point enhancement to her Criminal History Category under United States Sentencing Guidelines ("U.S.S.G.") § 4A1.1(d) for a warrant outstanding at the time of Defendant's arrest. (D.E. 1 at 1–2.)

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of

4

fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation omitted) (internal quotation marks omitted).

"[A] § 2255 motion is not a substitute for a direct appeal." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citation omitted) (internal quotation marks omitted). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976) (citation omitted). "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668[] (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Id*.

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698–99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating "that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citation omitted).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party

5

is not entitled to relief, the judge must dismiss the motion . . . ." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), Section 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7(a), Section 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollection of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . ."). Defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*,

466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88.

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. [*Strickland*, 466 U.S.] at 689 . . . . The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*[] at 687 . . . .

*Harrington v. Richter*, 131 S. Ct. 770, 787 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[1] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [*Strickland*, 466 U.S.] at 693 . . . . Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*[] at 687 . . . .

*Richter*, 131 S. Ct. at 787–88; *see also id.* at 791–72 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." (citations omitted)); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail.

---

[1] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant . . . ." *Strickland*, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." (citing *Strickland*, 466 U.S. at 694)).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S.[ at 689–90]. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*[ at 689]; *see also Bell v. Cone*, 535 U.S. 685, 702[] (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372[] (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S.[ at 690].

*Richter*, 131 S. Ct. at 788.

## III.  ANALYSIS

Croom contends that her attorney performed deficiently when she failed to investigate and object to a two-point enhancement to her Criminal History Category under U.S.S.G. § 4A1.1(d) for a warrant outstanding at the time of her arrest. (D.E. 1 at 1–2.) Defendant's presentence report ("PSR") states:

> Pursuant to U.S.S.G. §[ ]4A1.1(d), if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status, add two (02) levels. The defendant had an active probation warrant in Chester Court Case No. 12GS1-2003-1854, 1855 at the time of the instant offense. Two (02) points are therefore added.

(PSR ¶ 56.)

On February 18, 2011, counsel filed written objections to the PSR, including an objection to the calculation of Defendant's Criminal History, stating:

> Defendant states that although she did have this prior conviction she had no knowledge of any probation violation warrant. It was dismissed after apparently sitting inactive for years.
>
> To the best of Defendant's knowledge, the warrant concerned payment of fines/costs and simply remained 'live' until those amounts were paid. It appears there was never any court proceeding regarding the warrant, even though Defendant had contact with that Court while this warrant was outstanding.
>
> Defendant states that given the length of time this warrant apparently 'sat' inactive, to add the [two] additional criminal history point[s] which put[] Defendant into a higher criminal history category is inequitable.

(Cr. D.E. 94 at 3.)

The probation officer responded to the objection in the Second Addendum to the PSR, stating:

> Pursuant to Application Note 4 of U.S.S.G. § 4A1.1, "A defendant who commits the instant offense while a violation warrant from a prior sentence is outstanding (e.g., a probation, parole, or supervised release violation warrant) shall be deemed to be under a criminal justice sentence for the purposes of this provision if that sentence is otherwise countable, even if that sentence would have expired absent such warrant." In this case, Probation Officer Holly Hemby filed a probation violation on the defendant based on the defendant's failure to pay court costs and fines, the defendant's failure to pay supervision fees, the defendant's failure to report to the case officer as instructed, and the defendant's failure to provide proof of employment. Judge Larry McKenzie signed the warrant on July 2, 2004. This warrant remained active until it was dismissed on June 26, 2009. As such, the defendant committed the instant offense while under a criminal justice sentence.

(D.E. 1-2 at 2.) Counsel did not raise the objection during the sentencing hearing.

The Court recollects that the drug quantity attributable to Defendant was 1000 dosages or 2750 grams of Ecstasy, resulting in a base offense level of twenty-six. The base offense level was adjusted upward by two points because Defendant was a felon in possession of a firearm, resulting in an adjusted offense level of twenty-eight. The Court granted a three-level reduction

9

for Defendant's full acceptance of responsibility. The United States made no objection. Defendant's offense level became twenty-five. Pursuant to the terms of the negotiated plea agreement, the United States moved for an additional three-level downward departure, to offense level twenty-two, based on Defendant's assistance in prosecuting co-conspirators. Croom's advisory sentencing guidelines range was forty-six to fifty-seven months in prison. The United States also recommended that the Court impose a sentence at the low end of the guidelines range. Counsel urged the Court for leniency in formulating Defendant's sentence based on Defendant's exemplary conduct during her release pending sentencing and family concerns.

This Court believed that Defendant realized her bad choices, but had to consider the prolonged nature of her criminal conduct. The Court granted an additional three-level downward departure to offense level nineteen and imposed a term of thirty-six months in prison, to be followed by three years of supervised release.

Defendant contends that, had counsel pursued the Criminal History objection, she would have been eligible for a shorter sentence under the Sentencing Guidelines' safety valve provision. (D.E. 1 at 2.) The United States' responds that her contention is meritless because the outstanding warrant for Defendant's arrest was valid. (D.E. 14 at 7.)

The Guidelines are clear that, if the defendant has an outstanding violation warrant, the Court must add two points to her criminal history. *See* U.S.S.G. § 4A1.1(d). The probation officer correctly cited to Application Note 4 to U.S.S.G. § 4A1.1. The sentencing court was under no obligation to inquire into the warrant's validity. *United States v. Ramirez-Ramirez*, 296 Fed. App'x 330, 331 (4th Cir. 2008) (per curiam); *United States v. Davis*, 313 F.3d 1300, 1305–06 (11th Cir. 2002); *United States v. Mateo*, 271 F.3d 11, 16 (1st Cir. 2001); *United States v.*

*Anderson*, 184 F.3d 479, 481 (5th Cir. 1999) (per curiam); *United States v. Elmore*, 108 F.3d 23, 27–28 (3d Cir. 1997).

Likewise, Tennessee law provides Defendant with no support for her argument. A term of probation "expires when the term of the sentence is completed." *Brooks v. Brooks*, No. M2007-00351-COA-R3-CV, 2009 WL 928283 at *9 n.15 (Tenn. Ct. App. 2009) (citing *State v. Ruiz*, 204 S.W.3d 772 (Tenn. 2006); *State v. Beard*, 189 S.W.3d 730 (Tenn. Crim. App. 2005); *Kelly v. State*, 61 S.W.3d 341 (Tenn. Crim. App. 2000)). The Tennessee Supreme Court addressed the effect of a probation violation warrant on a term of probation in *State v. Shaffer*, 45 S.W.3d 553 (Tenn. 2001), stating such a warrant issued prior to the expiration of a probationary period "commences the revocation proceedings and thereby *interrupts* the running of the probationary period '*until such time as the trial court* [*may*] *hear and determine the issue raised by the* [*warrant*].'" *Shaffer*, 45 S.W.3d at 555 (emphasis added) (quoting *McGuire v. State*, 292 S.W.2d 190, 193 (Tenn. 1956). Under Tennessee law, Defendant's probationary period from her 2003 conviction did not expire until the warrant was dismissed on June 26, 2009. Her argument is without merit. She remained under a prior criminal judgment within the ambit of Guideline § 4A1.1(d) during the commission of this federal offense.

Finally, the safety valve provision provided in U.S.S.G. § 5C1.2 does afford a trial court limited discretion to depart from a statutory minimum sentence. However, U.S.S.G. "§ 5C1.2(a)(2) . . . renders a defendant ineligible for the benefit of the safety valve if he or she possessed a firearm in connection with the offense." *United States v. Likins*, 84 Fed. App'x 504, 512 (6th Cir. 2003). Croom was not eligible for the safety valve provision because she admitted she was a felon in possession of a firearm.

The Guidelines mandated enhancement of Defendant's criminal history category from category I to category II. Counsel did argue that the warrant was stale and not entitled to consideration. Counsel is not ineffective by failing to raise and pursue frivolous objections. Defendant has failed to establish either prejudice or ineffective assistance.

## IV.  CONCLUSION

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Defendant's conviction and sentence are valid; therefore, her motion to vacate (D.E. 1) is DENIED. Judgment shall be entered for the United States.

Pursuant to 28 U.S.C. § 2253(c)(1) and (2), the district court is required to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." *See also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

A COA may issue only if the movant "has made a substantial showing of the denial of a constitutional right," and the COA must "indicate the specific issue or issues [that] satisfy" the required showing. 28 U.S.C. § 2253(c)(2), (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation omitted) (internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).

"[A] COA does not require a showing that the appeal will succeed," *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011); however, courts should not

12

issue a COA as "a matter of course." *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (per curiam) (quoting *Miller-El*, 537 U.S. at 337).

In this case, for the reasons previously stated, Defendant's claim lacks substantive merit and, therefore, she cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)–(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file her motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)–(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED.

If Defendant files a notice of appeal, she must also pay the full $505 appellate filing fee, *see* 28 U.S.C. §§ 1913, 1917, or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days, *see* Fed. R. App. P. 24(a)(4)–(5).

IT IS SO ORDERED this 22nd day of January 2015.

                                                      s/ J. DANIEL BREEN
                                                     CHIEF UNITED STATES DISTRICT JUDGE